**No. 57577.**—Milo Radio & Electronics Corp. *v.* United States, petition 6870–R (New York).

RAO, Judge:   This is a petition filed pursuant to the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties assessed upon an importation by air of certain carbon resistors shipped from France.   As imported, the merchandise was packed in 22 cases, all of which were listed on a single invoice, the contents of each case being separately enumerated on a so-called packing list.   However, the said 22 cases were not imported at one time.   They were spread over six separate shipments and formed the subject of six separate consumption entries.   Four of the six entries, to wit, 901708, 901746, 901786, and 901787, are covered by the instant petition for remission.

The merchandise in each shipment was entered on the basis of the invoice price for each size of carbon resistor involved and was appraised at the higher values appearing in column 11 of the consular invoice.   Since the final appraised values exceeded the entered values, the additional duties here sought to be remitted were assessed.

At the trial, three witnesses were called in support of the allegations in the petition.   These were John K. Reilly, a partner in the firm of Roberts, Reilly & Sons, a customs broker and freight forwarder, hereinafter called Roberts, Reilly; Henry E. Sobeck, vice president of Dumont Shipping Co., Inc., also a customs broker and freight forwarder, hereinafter called Dumont; and Leo A. Klein, vice president of Milo Radio & Electronics Corp., the ultimate consignee, hereinafter called Milo.

It appears from their testimony that Dumont was retained by the French shipper to make entry of the involved merchandise in behalf of Milo, and that the latter ratified the employment of Dumont by forwarding to it all papers necessary to effectuate the entry of its merchandise, and by paying the requisite fees.   Dumont retained Roberts, Reilly to handle the entries on its behalf, and by letter dated September 18, 1950 (petitioner's exhibit 4), forwarded the following documents: Consular invoice No. 14945, a copy of which is in evidence as part of petitioner's exhibit 2; commercial invoice from the French shipper (petitioner's exhibit 1); the packing list for the total shipment of 22 cases; and a submission sheet signed by the ultimate consignee.

On September 19, 1950, Roberts, Reilly submitted these documents to the appraiser at the port of New York for information as to value.   Then, using the original invoices and other data covering the entire 22 cases, Roberts, Reilly made entry of the first shipment, consisting of 9 cases, at the values stated in the invoice. Extracts from the invoice were used for ensuing shipments, all of which likewise were entered at the invoice prices.

A separate submission sheet is annexed to the official papers in each of the successive entries.   The copy attached to entry 901746 contains the following red-ink-stamped notation:

ASCERTAIN FROM SHIPPER THE CORRECT
FOREIGN OR EXPORT VALUE
SEP 25 1950

No evidence of compliance with this suggestion is of record.

On or about August 1, 1951, Roberts, Reilly received from the appraiser certain A–16 forms (petitioner's collective exhibit 3).   These contained the values

at which it was contemplated the merchandise would be appraised, which values coincided with the figures shown in column 11 of the consular invoice. They also constituted notice that an opportunity was thereby being afforded to amend the entered values to the contemplated appraised values.

Upon receipt of the A–16 forms, Roberts, Reilly notified Dumont of the contemplated appraised values and requested a copy of the invoice. In compliance with that request, Dumont sent the quadruplicate copy of consular invoice No. 14945 to Roberts, Reilly and also asked for the figures on the amendments to the entries. The forwarding letter is in evidence as petitioner's exhibit 6. Reilly testified that since petitioner's exhibit 6 did not include specifications showing the quantities in each case, his firm was unable to make the amendments. He stated that he made repeated requests of Dumont for the specifications, but did not receive them, and so never filed the amendments. He admitted, however, that both consular and commercial invoices, as well as the packing lists containing the information which he needed to complete the amendments, were attached to the initial entry, and that he could have sent a man to the appraiser's office to secure the desired information. Nevertheless, he did not do so. It further appears that on December 19, 1951, after the merchandise had been appraised, Dumont sent Roberts, Reilly several strips containing specifications for case numbers 7, 10, 24, 26, 31, and 33.

Since the firm of Roberts, Reilly was employed by Dumont, it confined its requests for information to that company and did not at any time advise Milo of the fact that the merchandise would be appraised at values higher than the entered values. Neither did Roberts, Reilly contact Milo directly until after the receipt of notice that additional duties had been assessed. In fact, no one from Milo appears to have been approached for information in connection with this importation from the time the documents were first turned over to Dumont until March 1952, when it learned of the assessment of the additional duties; and Milo did not know before that time that Roberts, Reilly was acting for Dumont.

All three witnesses testified that the entering of the merchandise at bar at less values than those returned upon final appraisement was without any intent to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

It is the position of counsel for petitioner that it was petitioner's intent to comply fully with the requirements of the Tariff Act of 1930 to pay all duties which were properly due, but that it was frustrated in that intent by the acts or omissions of the two brokers who did not comply with the provisions of the Customs Regulations of 1943, governing the conduct of brokers. It would appear that petitioner seeks to divorce itself from any relation with its brokers, and, by holding itself aloof and removed, disclaim liability for their actions.

The right to a recovery herein may not be predicated upon such a theory. It was the duty of petitioner as an importer of merchandise to take affirmative action to the end that the same be properly entered. That duty could not be avoided either by the expedient of employing a broker to make the entry in its behalf or by isolating itself from the entire transaction.

In the case of *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70, it was stated:

It has frequently been pointed out that the entrant of merchandise owes a duty to inform himself as to the correctness of his representations as to the value of his merchandise and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute.

So far as this record is concerned, there is not a scintilla of evidence showing or tending to show why it was that Milo or the brokers thought the invoice values

were the proper values of the involved carbon resistors. From all that here appears, Milo forwarded all the papers to Dumont without instructions as to value; Dumont relayed the papers to Roberts, Reilly without instructions as to value; and Roberts, Reilly, without any demonstrated information as to the correctness of the invoice values, adopted the same in making entry of the merchandise.

It has been shown that Roberts, Reilly, before making entry, requested information of the appraiser through the medium of a submission sheet, but the record fails to reveal what recommendations were made by the appraiser or what the broker thereafter did to verify the invoice values. We have noted, *supra*, the red-ink-stamped statement on the submission sheet attached to entry No. 901746, although we are left without explanation as to how that statement happened to be placed there. In any event, it may fairly be assumed that Roberts, Reilly received no information as to value from the appraiser and did not contact the foreign shipper, as suggested.

The law is well settled that when a request for information of the appraiser has been returned without information, it places a customs broker on notice that he must seek additional information as to value. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306; *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392. Nevertheless, without any further investigation, without contacting either Dumont or Milo, the firm of Roberts, Reilly entered the merchandise at the invoice values.

Such indifference to the true value of the merchandise as is here displayed is not satisfactory evidence that the entry was made without intent to defraud. It does not gain in quality or character because the three witnesses who testified for petitioner categorically denied such intent. *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507.

Further examining into the record, we find that the appraiser notified Roberts, Reilly of contemplated higher appraised values, stating precisely what those values were, and offered the importer an opportunity to amend. That opportunity could have been seized upon to avoid the imposition of additional duties. However, simply because Dumont did not forward the packing list to Roberts, Reilly, the entries were not amended. This is an appalling showing of indifference, especially when both consular and commercial invoices and the packing lists were on file with the appraiser, and copies of the breakdown of merchandise in each case could easily have been obtained.

We are not even convinced that receipt of the packing lists was essential for the completion of the amendments. Each extract from the invoice listed the case numbers covered by the respective entry; each extract showed the number, respectively, of ¼-watt, ½-watt, and 1″-watt resistors contained in each case. The appraiser, in the A–16 form for each entry, clearly advised the contemplated value for each size. It seems to us that even a novice could have prepared proper amendments upon the basis of the figures which were readily available.

In passing, it is not amiss to comment upon what is tantamount to a dereliction of duty on the part of both of the brokers in this case. We think the ultimate consignee was grievously imposed upon by their neglect and indifference, but as the ultimate consignee is bound by the acts of its agents, and itself took no affirmative steps to ascertain that the entered values were correct, we are constrained to deny the instant petition as not supported by satisfactory evidence that the undervaluation in this case occurred without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

Judgment will be entered accordingly.